[No. 15942.    Department One.—December 6, 1895.]

LOWELL M. REDFIELD ET AL., RESPONDENTS, *v.* OAKLAND CONSOLIDATED STREET RAILWAY COMPANY, APPELLANT.

NEGLIGENCE—ACTION FOR DEATH—EXCESSIVE DAMAGES.—In an action for damages for the death of a wife and mother, prosecuted by her husband and minor children, a recovery of fourteen thousand dollars damage will not be disturbed upon appeal as excessive, where, after a careful review of the testimony, it cannot be said that the damage awarded by the jury appears to have been given under the influence of passion or prejudice.

ID.—AMOUNT OF RECOVERY—POLICY OF OTHER STATES—ABSENCE OF STAT-
UTORY RESTRICTION.—Although there are statutory restrictions in other
states limiting the amount of recovery in an action for death, such re-
strictions cannot be considered in this state; but section 377 of the Code
of Civil Procedure, having been enacted after such statutes were in ex-
istence, is a direct determination of the legislature of this state that the
policy adopted by other states should not exist here.

ID.—MEASURE OF DAMAGES—LIFE ANNUITY—PROVINCE OF JURY—RESTRIC-
TION OF JUSTICE.—The legislature has not declared the money value of
a life annuity in favor of the deceased to be the measure of damages in
an action for death, but has determined to leave the subject of the
amount of damages at large, to be determined by the jury, with the
single restriction that the damage allowed should be just, under all
the circumstances of the case.

ID.—REFUSAL OF INSTRUCTION—VALUE OF LIFE EXPECTANCY—OMISSION OF
MATERIAL ELEMENTS.—A proposed instruction asked by the defendant,
to the effect that the jury should have awarded the present value to the
plaintiffs of the principal of a life annuity in favor of the deceased wife
and mother, was properly refused, without regard to whether such value
is a correct measure of damages, upon the ground that the instruction
failed to set forth, as limiting elements, the facts that the husband's
life expectancy was less than that of the wife, and that as to him the
value of the annuity upon the life of the deceased should only continue
during his life expectancy; and that the value of the mother's life to the
children becomes less, in law, upon their attaining majority; and that
no evidence was given of the life expectancy of the minors.

ID.—PECUNIARY INTEREST OF ADULT CHILDREN IN LOSS OF MOTHER—IN-
STRUCTION.—The statute does not limit the right to prosecute an action
for death, or to recover damages, to minor children or minor heirs; and
where the evidence tending to show an injury to the children, resulting
from the loss of their mother, consisted of proof of her care and labor
bestowed upon them, her education, her character, her ability to train
and guide them, and her efforts for their welfare, the jury are authorized
to draw such conclusions from the evidence as their intelligence, experi-
ence, and observation may justify; and it is not error for the court to
instruct them that the pecuniary interest of children in the lives of their
parents does not necessarily end with their arrival at the age of major-
ity, but that they may allow for the probable loss of any benefit, if any,
of a pecuniary value, which a child would probably receive from its
mother after arrival at majority.

ID.—RIGHTS OF MINOR PLAINTIFFS—"HEIRS" OF WIFE AND MOTHER—
CONSTRUCTION OF CODE—COMMUNITY PROPERTY—COMMON LAW.—Sec-
tion 337 of the Code of Civil Procedure, giving a right of action for a
death caused by negligence to the "heirs or personal representatives" of
the deceased, is not intended to limit the damages recoverable to the com-
munity relation in which the husband is the only heir of the wife; but
the word "heirs" is used in its common-law sense, and denotes those
who are capable of inheriting from the deceased person generally, with-
out reference to the distribution of community property.

ID.—DAMAGES TO HEIRS OF WIFE NOT COMMUNITY PROPERTY—SUCCESSION
—RIGHTS OF HUSBAND.—The damages allowed to heirs for the death of
a wife and mother have no existence prior to her death, and are not

community property; and the husband's right to recover them is not based upon the supposition that they are a part of her estate, or passed to him under the statute relating to the succession or inheritance of property.

ID.—RECOVERY LIMITED TO INJURIES TO PLAINTIFFS.—The recovery in an action for death is for the injuries inflicted upon the plaintiffs, and not for the injuries inflicted upon the deceased.

ID.—JOINDER OF PARTIES—APPEARANCE BY HUSBAND AS GUARDIAN AD LITEM OF MINORS—INTEREST IN JUDGMENT.—All of the heirs may be joined as parties in an action for the death of a wife and mother, and the fact that the husband is a party individually, and that the minors also appeared by him as their guardian *ad litem*, does not affect their interest in the judgment, nor vest any part thereof, or any interest therein, in the guardian *ad litem;* and it is no ground of objection to the verdict and judgment that it runs in favor of the husband as an individual and also as guardian *ad litem* of the minors.

ID.—NEGLIGENCE OF ELECTRIC RAILROAD COMPANY—RUNAWAY OF CAR—INSUFFICIENT CARE AT SWITCH—ACCIDENTAL FALL OF MOTORMAN.—It is conclusive evidence of negligence for an electric railroad company to put but one man in charge of a car in passing a switch at a place where one man is required at each end of the car; and it is also negligence for the one man put in charge of the car not to stop the car to adjust the trolley in going around a curve over a switch upon a hill, where it appears that the accident occurred through the running away of the car, and its leaving the track in going down the hill with no one in charge, by reason of his having fallen to the ground in attempting to return to his position on the front platform, after having left it to adjust the trolley, and being rendered thereby unable to catch the car; and his accidental fall to the ground, under such circumstances, cannot render the injuries to the passengers the result of an unavoidable accident or inevitable casualty.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. F. W. HENSHAW, Judge.

The facts are stated in the opinion.

*Chickering, Thomas & Gregory, R. M. Fitzgerald*, and *Carl H. Abbott*, for Appellant.

The jury were obliged to reduce all the circumstances of the case to a pecuniary standard, eliminating damages for sorrow and mental anguish, and any *solatium* for wounded feelings, and to give no more damages than, under all the circumstances of the case, were just. (Code Civ. Proc., 377; *Beeson* v. *Green Mountain etc. Co.*, 57 Cal. 20; *Morgan* v. *Southern Pac. Co.*, 95 Cal. 510;

29 Am. St. Rep. 143.) The damages are so large and disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate discretion of the jury. (*Klemm* v. *New York Cent. etc. R. R. Co.*, 28 N. Y. Supp. 861, 863; *Morgan* v. *Southern Pac. Co., supra; Wheaton* v. *North Beach etc. R. R. Co.*, 36 Cal. 591; *Kinsey* v. *Wallace*, 36 Cal. 462, 480; *Tarbell* v. *Central Pac. R. R. Co.*, 34 Cal. 616, 623; *Aldrich* v. *Palmer*, 24 Cal. 513; *McIntyre* v. *New York Cent. R. R. Co.*, 47 Barb. 515; *Phelps* v. *Cogswell*, 70 Cal. 201; *Vaughn* v. *California Cent. Ry. Co.*, 83 Cal. 18; *St. Louis etc. Ry. Co.* v. *Robbins*, 57 Ark. 377; *Rose* v. *Des Moines etc. Ry. Co.*, 39 Iowa, 246, 254; *McAdory* v. *Louisville etc. Ry. Co.*, 94 Ala. 272; *Gulf etc. Ry. Co.* v. *Johnson*, 1 Tex. Civ. App. 103; *Nickerson* v. *Bigelow*, 62 Fed. Rep. 900; *Carpenter* v. *Buffalo etc. R. R. Co.*, 38 Hun, 116; *Chicago etc. Ry. Co.* v. *Bayfield*, 37 Mich. 204, 215; *Potter* v. *Chicago etc. Ry. Co.*, 22 Wis. 615.) Damages are excessive when the sum would purchase an annuity, for the term of expectancy of the life of the deceased, which annuity is in excess of the earnings or services of the deceased. (*Houston etc. Ry. Co.* v. *Cowser*, 57 Tex. 293; *McAdory* v. *Louisville etc. Ry. Co., supra; St. Louis etc. Ry. Co.* v. *Robbins, supra; Nickerson* v. *Bigelow, supra; The Oceanic*, 61 Fed. Rep. 363.) The courts of this state should be influenced by limits prescribed by statute in other states as to the amount of damages that can be recovered. (*The Oceanic, supra.*) The lower court erred in refusing to instruct the jury that they should not find in such a sum as would produce a fixed income equivalent to the value of the services of deceased for the term of expectancy of her life, and leave the principal remaining untouched in the hands of the plaintiffs at the end of that term. (*Nickerson* v. *Bigelow, supra; Houston etc. Ry. Co.* v. *Cowser, supra; McAdory* v. *Louisville etc. Ry. Co., supra; St. Louis etc. Ry. Co.* v. *Robbins, supra; Louisville etc. Ry.-Co.* v. *Trammell*, 93 Ala. 350.) The right of action in this case springs out of the community relations created between husband and wife by

the laws of this state, and the husband is the only heir who can maintain the action. (Code Civ. Proc., sec. 377; Civ. Code, secs. 162–64, 687, 1383–1401; *Beeson* v. *Green Mountain etc. Co.*, *supra;* 3 Am. & Eng. Ency. of Law, 354, tit. Community; *McFadden* v. *Santa Ana etc. Ry. Co.*, 87 Cal. 467, 468; *Tell* v. *Gibson*, 66 Cal. 247; *Henderson* v. *Kentucky etc. R. R. Co.*, 86 Ky. 389; *Jordan* v. *Cincinnati etc. R. R. Co.*, 89 Ky. 40; N. Y. Code Civ. Proc., secs. 1870, 1902, 1905; Ohio Rev. Stats., secs. 6134, 6135, as amended by act of April 13, 1880; Tiffany on Death by Wrongful Act, 36.)

*Hall & Earl*, for Respondents.

The verdict was not excessive. (*Cook* v. *Clay Street Hill R. R. Co.*, 60 Cal. 604; *Nehrbas* v. *Central Pac. R. R. Co.*, 62 Cal. 320; *Harkins* v. *Pullman Palace Car Co.*, 52 Fed. Rep. 724; *Texas Pac. Ry. Co.* v. *Geiger*, 79 Tex. 13; *Bertha Zinc Co.* v. *Black*, 88 Va. 303; *St. Louis etc. Ry. Co.* v. *Johnston*, 78 Tex. 536; *McDermott* v. *Iowa Falls etc. Ry. Co.*, Iowa, Jan. 24, 1891; *Texas etc. Ry. Co.* v. *Robertson*, 82 Tex. 657; 27 Am. St. Rep. 929; *Missouri Pac. Ry. Co.* v. *Lehmberg*, 75 Tex. 61.) This court will not interfere with the verdict of the trial jury, unless it be manifest at the first blush that the verdict was given under the influence of passion or prejudice. (*Aldrich* v. *Palmer*, 24 Cal. 516; *Boyce* v. *California Stage Co.*, 25 Cal. 473; *Wheaton* v. *North Beach etc. R. R.*, 36 Cal. 591; *Harris* v. *Zazone*, 93 Cal. 72.) The instruction proposed by the appellant, relating to the basis of computation of damages to Mr. Redfield by the death of his wife, was properly refused, as it was ambiguous and did not take into consideration his expectancy of life. (*Louisville etc. Ry. Co.* v. *Wright*, 134 Ind. 509; *Balch* v. *Grand Rapids etc. R. R. Co.*, 67 Mich. 394; *Wheelan* v. *Chicago etc. Ry. Co.*, 85 Iowa, 167.) The instruction as to the damage sustained by the children was properly given. Children have a pecuniary interest in the lives of their parents, which may extend beyond their minority, and even an adult may recover damages for the death of the parent.

(Code Civ. Proc., sec. 377; *Cederberg* v. *Robison,* 100 Cal. 93; *Lockwood* v. *New York etc. R. R. Co.,* 98 N. Y. 523; *McIntyre* v. *New York Cent. R. R. Co.,* 37 N. Y. 287; *Tilley* v. *Hudson River R. R. Co.,* 29 N. Y. 252; *Tuteur* v. *Chicago etc. R. R. Co.,* 77 Wis. 505; *Railroad Co.* v. *Barron,* 5 Wall. 90; *Petrie* v. *Columbia etc. R. R. Co.,* 29 S. C. 303; *Galveston etc. Ry. Co.* v. *Kutac,* 72 Tex. 643.) The word "heirs," as used in section 377 of the Code of Civil Procedure, includes the children. (*Munro* v. *Pacific etc. Reclamation Co.,* 84 Cal. 515; 18 Am. St. Rep. 248; *Hartigan* v. *Southern Pac. Co.,* 86 Cal. 142.) The damages recovered were not the product of the community relation existing between the husband and wife, and the word "heirs" does not refer to those persons who would succeed to the money if it had been community property at the time of the death of Mrs. Redfield. (Civ. Code, sec. 1401; *Estate of Rowland,* 74 Cal. 525; 5 Am. St. Rep. 464; *Carrithers* v. *Cox* (Ky., Oct. 30, 1890), 14 S. W. Rep. 599.)

HAYNES, C.—The defendant, the Oakland Consolidated Street Railway Company, operated an electric street-car line between the city of Oakland and Mountain View Cemetery.

On May 6, 1893, Adeline B. Redfield and her children, Lowell M. Redfield and Mattie A. Redfield, got upon one of the defendant's cars at or near Mountain View Cemetery to return to the city of Oakland. This car was operated by only one man, as was customary upon that line. The car in question had a solid glass partition separating the body of the car, in which the seats were, from the platforms at each end, which were intended for the motorman; and the only way the motorman could pass from one end of the car to the other was along the step on the outside of the car.

From the cemetery the track runs toward the city for some distance on a practically level grade; then ascends a grade to the summit of a hill, at a switch, which is the highest point of the track. From that point the

track descends.   On the summit of the hill the track is comparatively straight for about thirty-five feet.   From the switch the track descends at a varying grade for a distance of about one-half a mile to Booth street, and then turns to the right, or.west.

When the car was going up the hill above mentioned the motorman, who was then upon the front end of the car, jumped off and got on again at the rear end of the car and took hold of the trolley rope to adjust the trolley around a curve over the switch, the car going up the hill slowly.   When the switch was reached the motorman had some trouble in putting the trolley on the right wire.   In attempting to return to the front platform he fell to the ground, and when he got up he was unable to catch the car, which by this time was going down the hill.   The car ran down the hill to the curve, where it left the track and went across the road on one side, until it struck the gutter, when it righted itself and flew across a field until it stopped.   Said Adeline B. Redfield in some way struck her head and fell off the car after it left the track, and received such injuries that she died therefrom on the twenty-ninth day of June, 1893.

This action is prosecuted by her husband, Horace A. Redfield, and her two minor children for the recovery of damages.   The jury returned a verdict for the sum of fourteen thousand dollars, upon which judgment was entered; and this appeal is from the judgment and also from an order denying the defendant's motion for a new trial.

The points made by appellant will be noticed substantially in the order in which they are presented in its brief.

1. "The damages are excessive.   The sum of fourteen thousand dollars is so large, in view of the law of the case and the instructions of the court, that it conclusively appears to have been given under the influence of passion or prejudice."

This action is brought under section 377 of the Code of Civil Procedure, which is as follows: "When the death

of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section such damages may be given as under all the circumstances of the case may be just."

Appellant's contention as to the true mode of ascertaining the amount of damages to be awarded in cases such as this is stated in an instruction requested by appellant to be given to the jury, as follows: "If you find for the plaintiffs, you must find in such amount as shall to you seem just, considering the present worth of the life of the deceased to the plaintiffs; that is to say, you must not find any such sum as would produce a given income for the time fixed, the principal remaining on hand at the end of that time, but the present value of such principal, that is, what it would be worth to-day. It is shown by the American experience tables of mortality that a person aged thirty-five years would probably live thirty-one and eight-tenths years longer. You must determine the present value of that life, and not find any such sum as would produce a fixed income for the supposed term of life and leave the principal in the hands of the plaintiffs at the expiration of that time; but you must find the present value of that amount and render the verdict accordingly."

Mrs. Redfield, at the time of her death, was thirty-five years of age, and was the wife of the plaintiff Horace A. Redfield, and the mother of plaintiffs Lowell A. Redfield and Mattie A. Redfield. Her expectancy of life was thirty-one and eight-tenths years, and the expectancy of life of her husband was twenty-nine and sixty-two one-hundredths years. The children were aged twelve and eleven years, respectively. She was an educated lady, a graduate of Field's Seminary. The testimony shows that she was competent to give lessons and in-

struct her children upon the piano and in vocal music; was a thorough housekeeper; did all her own work; made all the clothing, including the trimming of hats and bonnets, for her children and herself; took pains in directing the education of her children; cared for them when they were sick; and looked after the comfort of her husband as well. The testimony further shows that she was devoted to her children, was extremely solicitous in regard to their care, and was constantly watchful of their conduct and the training of them morally as well as otherwise.

It is true that in all such cases it is difficult to fix the definite money value of the services of such a wife and mother. Precise accuracy in that regard is not capable of being attained either by a court or jury. In eleven states the amount of damages that can be awarded for the death of a person is limited to five thousand dollars, in one state to seven thousand dollars, and in eight states and territories, including the District of Columbia, it is limited to ten thousand dollars. In this state there is no statutory restriction or direction except the general statement that " such damages may be given as under all the circumstances may be just." In those states where the amount of the recovery is limited it may, or it may not, happen that just compensation is made, inasmuch as circumstances would often occur which would make the maximum amount far less than a just compensation.

It is contended by appellant that so many states have determined that it is wise to limit the amount that can be recovered as damages, in cases like the present, that we should look to such limitations in determining the amount to be recovered, and be governed thereby; but such statutes were in existence long before section 377 of the Code of Civil Procedure was enacted, and this provision of the code is a direct determination of our legislature that the policy adopted by other states in that regard should not exist here. So, too, it may be said that while such sum as would purchase an annuity

equal to the money value of the life and services of the deceased would give an exact measure of the damages sustained by the survivor or survivors, the legislature has not seen proper to declare that to be the measure of damages in such cases, but has determined to leave the subject of determining the amount at large, with the single restriction that the damages allowed should be just under all the circumstances of the case.

That, as a general rule, such questions can be better determined by a jury than by the court is generally conceded; and our statute has limited the power of the court over the verdicts of juries in such cases.

Section 657 of the Code of Civil Procedure provides that the verdict or other decision may be vacated, and a new trial granted, for any of the following causes materially affecting the substantial rights of such party: " 5. Excessive damages appearing to have been given under the influence of passion or prejudice."

In *Morgan* v. *Southern Pac. Co.*, 95 Cal. 501, 508, this court said: " The amount of the verdict is certainly quite large—larger than we, if sitting as a jury, would have felt it our duty to give. But that consideration alone is not sufficient to warrant us in disturbing the verdict. There is no absolute rule in such a case; and about all that can be safely said on the subject may be found in the opinion of the court in *Aldrich* v. *Palmer*, 24 Cal. 513, and the cases there cited. The general conclusion, as nearly as can be formulated, is as there stated, namely: that a verdict will not be disturbed because excessive, unless the amount of the damages is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate discretion of the jury."

We are unable to say, after a careful review of the testimony, that the damages awarded by the jury " appear to have been given under the influence of passion or prejudice "; and such appears to have been the conclusion of the learned trial judge who denied appellant's motion for a new trial.

It is not necessary to review the very large number of authorities cited by appellant as to the mode of estimating the value of a life, since if we were to apply that rule we would be compelled to place ourselves in the position of jurors, and pursue an independent investigation for the purpose of determining the annual value to the plaintiffs of the life of the deceased, and upon that basis determine the sum required to purchase an annuity which should equal the annual value of the life of the deceased.   This we do not feel called upon to do, at least in the absence of a conviction based upon all the facts of the case that the jury were influenced by passion or prejudice in fixing the amount of damages awarded the plaintiffs.

2. The refusal to give defendant's proposed instruction above quoted was not error.   The contention of appellant as to the measure and amount of damages is that the jury should have awarded such a sum as, invested in an annuity, would have yielded to the husband and to the children an income which would be the fair equivalent to them of the monetary value of the life of the dead wife and mother.   Conceding for the purposes of this discussion only, and not deciding that this is a correct rule, it is at once apparent that the elements of which such a measure would be composed are the expectancies of life: 1. Of the wife; 2. Of the husband; and 3. Of each of the children.   In other words, the annuity in no event should continue longer than the life expectancy of the wife.   If the husband's expectancy was less than hers, then, as to him, it should continue only during that expectancy; and so as to the annuity of the children.   In addition, the value of the mother's life to the children becomes less in law upon their attaining majority.   Each of these considerations, therefore, becomes essential to a proper determination under appellant's rule.   Yet a reading of the instruction discloses that it fails to set them forth.   The expectancy of life of the husband and children is not brought into the calculation, nor the time when the

minority of the children would cease. Moreover, the record discloses no evidence given of the life expectancy of the minors. The proposed instruction, therefore, was radically defective even under appellant's theory, and was therefore properly refused.

3. It is contended that the court erred in giving the following instruction: "The pecuniary interest of children in the lives of their parents does not necessarily end with their arrival at the age of majority; but you may allow for the probable loss of any benefit, if any, of a pecuniary value which the child would probably receive from its mother after its arrival at majority." This instruction was given as a part of the general instruction above quoted. We see no error in this instruction. Immediately preceding the instruction last above quoted, the jury were instructed as follows: "And so, in determining the amount of damages to the children, you have a right to consider the value of the nurture and instruction, moral and physical, and intellectual training, if any, which the mother gives to the children; and, in determining such value, you are not limited to a case of similar services rendered by a hired servant, but may take into consideration the value of such services when rendered by the mother to her children, having regard to the evidence in this case, if there be any, as to the ability and willingness of the deceased to nurture, care for, train, and educate her children."

It is contended, however, that no special or any circumstances were shown which would cause the children to depend upon their mother after they arrived at majority, or that after that time they would suffer loss from her death. It is true that the only evidence which tended to show an injury to the children resulting from the loss of the mother was her care and labor bestowed upon them, her education, her character, her ability to train and guide them, and efforts for their welfare; and, in applying such testimony, the jury were authorized to draw such conclusions therefrom as their intelligence, experience, and observation should justify.

Nor are we prepared to say that her intelligent care and assistance would be less valuable to them at the critical period of their lives when they are about to enter, or have entered, upon a more or less distinct and separate life, after attaining their majority. Besides, the statute does not limit the right to prosecute the action, or to recover damages, to minor children or minor heirs.

4. But it is contended by appellant that the minor plaintiffs are not entitled to recover damages at all; that section 377 of the Code of Civil Procedure gives a right of action in such cases only to the " heirs or personal representatives," and that in this state, where community property is recognized, the husband is the only heir of the wife, and that the damages recoverable are based entirely upon such community relation.

This point was not made in the court below. Section 430 of the Code of Civil Procedure specifies as óne of the grounds of demurrer " a defect or misjoinder of parties plaintiff or defendant "; and section 434 provides that if no objection be taken, either by demurrer or answer, upon the grounds stated in section 430, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and that the complaint does not state facts sufficient to constitute a cause of action. Nor was any objection or exception taken to evidence upon the trial tending to prove damages sustained by the children. If the record, in any manner, presents the question, it is upon a general exception to certain instructions given to the jury, and which exceptions give no hint of the point now made, though possibly broad enough to include it.

We think, however, that appellant is mistaken in its construction of section 337 of the Code of Civil Procedure. The damages recoverable are not the product of the community effort or of community accumulations; nor does the word " heirs," as there used, refer to

those persons who would succeed to the money so recover-
able if it had been in the possession of the community as
community property at the time of Mrs. Redfield's
death; but the word is used in its common-law sense,
and denotes those who are capable of inheriting from
the deceased person generally, and without the limita-
tion resulting from statutes relating to the distribution
of community property. It is true that, under section
1401 of the Civil Code, upon the death of the wife the
entire community property, without administration,
belongs to the surviving husband (with certain excep-
tions not affecting this question), but the damages here
sought to be recovered arose upon Mrs. Redfield's death,
and in consequence thereof, and had no existence prior
to her death, and the husband's right to recover them is
not based upon the supposition that they were a part of
her estate which existed even a moment before her
death; but his claim to damages is for an injury per-
sonal to himself, and not for injuries inflicted upon the
wife, and which passed to him under the statute relat-
ing to the succession or inheritance of property. Her
personal representative might have maintained the ac-
tion; but, in such case, the damages recovered would not
have belonged to her estate, nor been liable for her
debts; and the same thing would be true if the hus-
band had died from similar injuries, and the recovery
had been obtained by his personal representative. The
recovery is for the injury inflicted upon the plaintiffs
personally, and not for injuries inflicted upon her; and
the word " heirs" in the statute is intended to limit the
right of recovery to a class of persons who, because of
their relation to the deceased, are supposed to be injured
by her death. *Tell* v. *Gibson,* 66 Cal. 247, and *McFad-
den* v. *Santa Ana etc. Ry. Co.,* 87 Cal. 467, were actions
to recover damages for personal injuries to the wife not
resulting in death, and have no application to the ques-
tion before us.

5. It is also contended that the verdict and judgment
is against law, in that the judgment cannot run in favor

of Horace A. Redfield as an individual, and also as guardian *ad litem* of the minors.

*Dias* v. *Phillips*, 59 Cal. 293, cited by appellant, has no application here. That was an action brought by the plaintiff as an individual, and also in his capacity as an executor. There is no authority of law for such joinder. But here the statute authorized the action to be brought by the " heirs," no matter how many there may be. The fact that the minors appeared by a guardian *ad litem*, as they were compelled to do, does not affect their interest in the judgment, nor vest any part of or interest in it in the guardian *ad litem*.

6. It is also contended " that the evidence shows that the injury complained of was the result of an unavoidable accident and inevitable casualty," and that, therefore, the evidence was insufficient to justify the verdict. The fact that, in passing the switch, the attention of one man was required at each end of the car, and that one man could not be at both ends at the same time, conclusively shows negligence on the part of the defendant in putting but one man in charge of the car to perform both duties. Or if, on the other hand, the man in charge could have stopped the car by shutting off the power, and changed the trolley to the proper wire, it was negligence for him to leave the motor with the power on, and the car in motion, to go to the other end of the car to adjust the trolley. The fall of the motorman, while attempting to return to the front platform, was accidental; but it was not accidental that but one man was put in charge of the car when two were required, or that the one man did not stop the car to adjust the trolley, if the adjustment could be made in that way. The fact that for some months one man had operated the car without accident does not show the absence of constant danger, while the circumstances under which the accident occurred shows that it might have occurred many times, and that it was a constant and continuing negligence to operate the car with but one man in charge.

We find no ground upon which the judgment and order appealed from should be reversed, and advise that they be affirmed.

SEARLS, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

HARRISON, J., GAROUTTE, J., VAN FLEET, J.

Hearing in Bank denied.